UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                               :

                               :        **ECF CASE**

In re SALOMON SMITH BARNEY MUTUAL    :
FUND FEES LITIGATION                  :        **No. 04 Civ. 4055 (PAC)**

                               :

                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT

Milbank, Tweed, Hadley & McCloy LLP
 James N. Benedict
 Sean M. Murphy
 C. Neil Gray
 L. Anthony Pellegrino
 Andrew W. Robertson
One Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY ..................................................................................................... 2

STATEMENT OF PLAINTIFFS' ALLEGATIONS ................................................................ 5

ARGUMENT ......................................................................................................................... 7

I.   THE COMPLAINT FAILS TO MAKE ALLEGATIONS RELATING TO THE
     ONE-YEAR DAMAGE PERIOD AS REQUIRED BY ICA SECTION 36(b) ............... 7

     A.   Plaintiffs' Previous Complaints Did Not Comply with the Requirements of
          Section 36(b) for Instituting an "Action" ................................................................ 8

     B.   Plaintiffs' Allegations Relating to Conduct During the Relevant Time
          Period Are Insufficient to State a Claim Under Section 36(b) ............................ 11

II.  ALTERNATIVELY, PLAINTIFFS ARE PRECLUDED FROM CONTINUING
     THE INSTANT ACTION UNDER SECTION 36(b) BECAUSE THE PRIOR
     ACTION WAS PREEMPTED BY SLUSA .................................................................. 13

III. REGARDLESS OF THE APPLICABLE TIME PERIOD, PLAINTIFFS'
     ALLEGATIONS FAIL TO STATE A CLAIM UNDER SECTION 36(b) ................... 17

     A.   Plaintiffs' Allegations Against the Investment Adviser Defendants with
          Respect to Advisory Fees Are Insufficient to State a Claim .............................. 18

          1.   Profitability ................................................................................................. 19

          2.   Economies of Scale ..................................................................................... 20

          3.   Comparative Fee Structures ........................................................................ 23

          4.   Nature and Quality of Services ................................................................... 25

          5.   Fall-Out Benefits ......................................................................................... 26

          6.   Independence and Conscientiousness of the Funds' Independent
               Directors ..................................................................................................... 29

     B.   Plaintiffs' Allegations Against the Distributor Defendant with Respect to
          Rule 12b-1 Fees Are Also Insufficient to State a Claim ....................................... 30

1.      Nature and Quality of Services .................................................................. 30

2.      Profitability ............................................................................................... 31

3.      Economies of Scale ................................................................................... 31

4.      Comparative Fee Structures ...................................................................... 32

5.      Fall-Out Benefits ....................................................................................... 32

6.      Independence and Conscientiousness of the Funds' Independent
        Directors ................................................................................................... 33

IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ......................... 33

CONCLUSION .............................................................................................................. 34

# <u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

## CASES

*Adler v. Berg Harmon Assocs.*,
  816 F. Supp. 919 (S.D.N.Y. 1993)..................................................................... 33

*Am. Nat'l Bank Trust v. Equitable Life Assurance Soc'y of the U.S.*,
  406 F.3d 867 (7th Cir. 2005) ........................................................................... 14

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006).................................................................... passim

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*,
  155 F.3d 59 (2d Cir. 1998)................................................................................ 19

*Benak v. Alliance Capital Mgmt. L.P.*,
  No. Civ.A. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ............................ 25, 28, 33

*Brever v. Federated Equity Mgmt. Co.*,
  233 F.R.D. 429 (W.D. Pa. 2005) ....................................................................... 10

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)................................................................................ 19

*Dangler v. New York City Off Track Betting Corp.*,
  193 F.3d 130 (2d Cir. 1999).............................................................................. 19

*Dumond v. Mass. Fin. Servs. Co.*,
  No. Civ.A. 04-11458-GAO, 2006 WL 149038 (D. Mass. Jan. 19, 2006) ............................ 18

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................... 18

*Fitzgerald v. Citigroup, Inc.*,
  No. 03 Civ. 4305 (S.D.N.Y. 2003) ..................................................................... 4

*Gallus v. Am. Express Fin. Corp.*,
  370 F. Supp. 2d 862 (D. Minn. 2005)................................................................. 18

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
  528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982),
  *cert. denied*, 461 U.S. 906 (1983) ..................................................................... 23

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
  694 F.2d 923 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983)................................. passim

*Hunt v. Invesco Funds Group, Inc.*,
  No. H-04-02555, 2006 WL 1581846 (S.D. Tex. June 5, 2006)............................ 18

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
  No. 04 Civ. 4885 (SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005)............................ 12

*In re AllianceBernstein Mutual Fund Excessive Fee Litig.*,
  No. 04 Civ. 4885 (SWK), 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ................ 8, 12, 23, 34

*In re American Mut. Funds Fee Litig.*,
  No. CV-04-5593-GAF (RNBx), 2005 WL 3989803 (C.D. Cal. Dec. 16, 2005)................... 9

*In re BlackRock Mut. Funds Fee Litig.*,
No. 04 Civ. 164 (TFM), 2006 U.S. Dist. LEXIS 13846 (W.D. Pa. Mar. 29,
2006) ................................................................................................................... 9

*In re Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186 (MGC), 2005 WL
2509732, at *3 (S.D.N.Y. Oct. 11, 2005) ....................................................... 33

*In re Dreyfus Mut. Funds Fee Litig.*,
No. 04-0128, 2006 WL 909434 (W.D. Pa. Apr. 10, 2006) ................................. 9

*In re Eaton Vance Mut. Funds Fee Litig.*,
380 F. Supp. 2d 222 (S.D.N.Y.),
*recons. denied*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005) ................................. 17, 33

*In re Eaton Vance Mut. Funds Fee Litig.*,
403 F. Supp. 2d 310 (S.D.N.Y. 2005) .............................................................. 33

*In re Franklin Mut. Funds Fee Litig.*,
388 F. Supp. 2d 451 (D.N.J. 2005),
*recons. denied*, No. 2:04CV982 (D.N.J. Dec. 28, 2005) ..................................... 9

*In re Goldman Sachs Mut. Funds Fee Litig.*,
No. 04 Civ. 2567 (NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) .............. 34

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................... 18, 19, 24

*In re Lord Abbett Mut. Funds Fee Litig.*,
385 F. Supp. 2d 471 (D.N.J. 2005),
*amended by* 407 F. Supp. 2d 616 (D.N.J. 2005) .................................................. 9

*In re Lord Abbett Mutual Funds Fee Litig.*,
No. 04-CV-0559, 2006 WL 3483946 (D.N.J. Dec. 4, 2006) ..................... 2, 14, 15, 16

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ........... 19, 23, 34

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) .......................................................... passim

*In re Smith Barney Transfer Agent Litig.*,
No 05 Civ. 7583 (WHP) (S.D.N.Y. filed Oct. 11, 2005) ................................... 28

*Jones v. Harris Assocs*,
No. 04 C 8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005) ................................ 18

*Kalish v. Franklin Advisers, Inc.*,
742 F. Supp. 1222 (S.D.N.Y. 1990) ............................................................. 21, 26

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) ............................................................................. 19

*Krantz v. Prudential Inv. Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002) ............................................................................. 18

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
77 F. Supp. 2d 559 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002) ............... 28

*Krinsk v. Fund Asset Mgmt., Inc.*,
No. 85 Civ. 8428 (JMW), 1986 WL 205 (S.D.N.Y. May 9, 1986) ................. 10, 11

*Krinsk v. Fund Asset Mgmt., Inc.*,
   715 F. Supp. 472 (S.D.N.Y. 1988),
   *aff'd*, 875 F.2d 404 (2d Cir. 1989) ....................................................................... 27

*Krinsk v. Fund Asset Mgmt., Inc.*,
   875 F.2d 404 (2d Cir. 1989) ................................................................... 17, 19, 21

*Leeds v. Meltz*,
   85 F.3d 51 (2d Cir. 1996) ......................................................................................... 32

*Mayle v. Felix*,
   125 S. Ct. 2562 (2005) ............................................................................................... 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   126 S. Ct. 1503 (2006) ................................................................................... 5, 15, 16

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) ..................................................................... 18, 25, 26

*Olmsted v. Pruco Life Ins. Co.*,
   283 F.3d 429 (2d Cir. 2002) ....................................................................................... 9

*Pani v. Empire Blue Cross Blue Shield*,
   152 F.3d 67 (2d Cir. 1998) ........................................................................................ 19

*Patenaude v. Equitable Life Assurance Soc'y of the U.S.*,
   290 F.3d 1020 (9th Cir. 2002) .................................................................................. 15

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*,
   663 F. Supp. 962 (S.D.N.Y.), *aff'd*, 835 F.2d 45 (2d Cir. 1987), *cert. denied*,
   485 U.S. 1034 (1988) ................................................................................................ 26

*Sins v. Janus Capital Mgmt*,
   Nos. 04-cv-01647-WDM-MEH, 04-cv-02395-MSK-CBS,
   2006 WL 3746130 (D. Colo. Dec. 15, 2006) ........................................................ 18

*Strigliabotti v. Franklin Res., Inc.*,
   No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ........................ 18

*Strougo v. BEA Assocs.*,
   188 F. Supp. 2d 373 (S.D.N.Y. 2002) ..................................................................... 29

*Wicks v. Putnam Inv. Mgmt*,
   No. Civ.A. 04-10988-GAO, 2005 WL 705360 (D. Mass. Mar. 28, 2005) ........... 18

## STATUTES

15 U.S.C. § 78bb(f) ........................................................................................................ 1

15 U.S.C. § 78bb(f)(1) ................................................................................................ 5, 14

15 U.S.C. § 78bb(f)(5)(B) ............................................................................................. 14

15 U.S.C. § 80a-2(a)(9) ................................................................................................. 29

15 U.S.C. § 80a-35(b) .................................................................................................. 1, 9

15 U.S.C. § 80a-35(b)(3) ................................................................................................. 8

28 U.S.C. § 2072(b) ....................................................................................................... 11

## OTHER AUTHORITIES

H. Rep. No. 1382, 91st Cong., 2d Sess. 201 (1970) .................................................. 10

*In re Smith Barney Fund Mgmt.*,
    Exchange Act Release No. 51761 (May 31, 2005)........................................... 28

S. Rep. No. 184, 91 Cong., 1st Sess. (1970)................................................... 10, 25

## RULES

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1

Fed. R. Civ. P. 15(c) .............................................................................................. 11

Defendants Citigroup Asset Management; Salomon Smith Barney Inc., n/k/a Citigroup Global Markets Inc. ("SSB"); Salomon Brothers Asset Management Inc. ("SBAM"); and Smith Barney Fund Management LLC ("SBFM")[1] submit this memorandum in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f), to dismiss the Second Consolidated Amended Complaint ("Second Amended Complaint" or "SAC") with prejudice for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

The Second Circuit recently affirmed the dismissal of a claim under Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), in *Amron v. Morgan Stanley Investment Advisors, Inc.*, 464 F.3d 338 (2d Cir. 2006), because the allegations in the complaint were insufficient to support a finding that the challenged fees were "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.* at 344 (quoting *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983)). In *Amron*, the Second Circuit makes clear beyond all doubt that general allegations are insufficient to state a claim under Section 36(b) and that a plaintiff must allege *specific facts* demonstrating why the challenged fees are excessive under the so-called *Gartenberg* factors.

Plaintiffs allege no such facts here. Instead, they rely on speculative and conclusory assertions, many of which were previously rejected by this Court as insufficient to

---

[1] Citigroup Asset Management ("CAM") was a business group of Citigroup Inc., comprised of various investment advisers, including SBAM and SBFM. It was not a legal entity and was not incorporated in any state. It should therefore be dismissed from this action.

Defendants SSB, SBAM, and SBFM are collectively referred to herein as the "Investment Adviser Defendants." Defendant SSB, when acting in its capacity as a distributor of the Funds, is referred to herein as the "Distributor Defendant."

state a claim under Section 36(b) and others of which are contradicted by other allegations in the Complaint or by documents that may properly be considered by the Court in deciding this motion.  These allegations are insufficient to state a claim under Section 36(b).

The Court need not reach this issue to dismiss the Complaint, however, because Plaintiffs make virtually no allegations (conclusory or factual) regarding the one-year period immediately preceding the filing of the Second Amended Complaint, as required by the plain language of Section 36(b).  Plaintiffs may not take advantage of their previously dismissed complaints to challenge fees paid during an earlier one-year period for two reasons.  First, the prior complaints were brought directly on behalf of Fund shareholders rather than derivatively on behalf of the Funds.  Therefore, neither constituted an "action" for purposes of determining the one-year look-back period under Section 36(b)(3).  Second, if the Court finds that Plaintiffs' previously dismissed complaints did constitute an "action" under Section 36(b), that action was terminated when the Court dismissed Plaintiffs' state-law claims pursuant to SLUSA.  *See In re Lord Abbett Mutual Funds Fee Litig.*, No. 04-CV-0559, 2006 WL 3483946 (D.N.J. Dec. 4, 2006).  Accordingly, the relevant period for Plaintiffs' Section 36(b) claims is one-year prior to the filing of the Second Amended Complaint, and those claims should be dismissed because Plaintiffs make virtually no allegations relating to the relevant period.

## **PROCEDURAL HISTORY**

This litigation began on May 28, 2004, when Larry D. Turner filed his Consolidated Class Action Complaint (the "Original Complaint"), which was one of several substantially similar complaints filed by certain of the same plaintiffs' counsel against more than twenty other investment advisers across the country.  Shortly thereafter, on December 15, 2004, twenty-three institutional and individual investors filed a 148-page Consolidated Amended Class

Action Complaint ("First Amended Complaint" or "FAC"), alleging that SSB and its affiliates engaged in a complex and undisclosed scheme to defraud investors in mutual funds organized and offered by SSB.  Specifically, the First Amended Complaint alleged that (1) SSB offered undisclosed incentives to broker-dealers and financial advisers to steer investors into SSB's proprietary funds and other funds with which SSB had undisclosed kickback arrangements; (2) SSB funded this distribution scheme by extracting improper fees from investors in its proprietary funds, such as Rule 12b-1 fees, brokerage commissions, and soft dollar payments; and (3) SSB caused its proprietary funds to invest in poorly performing companies because of their status as SSB investment banking clients.  Based on these allegations, the First Amended Complaint asserted thirteen claims for relief under various provisions of federal and state law on behalf of a proposed class of all persons or entities who purchased or held shares of the eighty-eight mutual funds organized and offered by SSB between March 22, 1999 and March 22, 2004.

Among the thirteen claims asserted in the First Amended Complaint was one claim under Section 36(b).  That claim alleged that SSB and its affiliates "violated Section 36(b) by improperly charging investors in the Proprietary Funds purported Rule 12b-1 marketing fees, and by drawing on Proprietary Funds [sic] assets to make undisclosed payments of Soft Dollars and excessive commissions . . . in violation of Rule 12b-1."  (FAC ¶ 389.)  Although Plaintiffs sought to recover advisory fees paid by the funds to SSB and its affiliates (FAC ¶ 392), the First Amended Complaint did not allege that the advisory fees themselves were excessive in violation of Section 36(b).  Instead, it focused exclusively on the allegedly improper Rule 12b-1 fees, brokerage commissions, and soft dollar payments.  Plaintiffs also asserted two claims under state law against the investment adviser and director defendants for breach of fiduciary duty.

On July 26, 2006, the Court granted Defendants' motion to dismiss the First
Amended Complaint in its entirety.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441
F. Supp. 2d 579 (S.D.N.Y. 2006) ("*In re SSB*").  The Court dismissed Plaintiffs' Section 36(b)
claim for two independent reasons.  First, Plaintiffs improperly brought the Section 36(b) claim
directly as a class action on behalf of fund shareholders, rather than derivatively on behalf of the
funds as required by the plain language of Section 36(b).  *See id.* at 594-97.  Second, Plaintiffs'
allegations regarding Rule 12b-1 fees, brokerage commissions, and soft dollar payments failed to
state a claim under Section 36(b), which focuses on the relationship between the services
provided to a fund by an investment adviser and the fees paid by the fund for those services.  *See
id.* at 597-603.

The Court granted Plaintiffs leave to replead their Section 36(b) claim
derivatively on behalf of the funds[2] and cautioned Plaintiffs to conform their allegations to the
following pleading standards.  First, Section 36(b) can be used to challenge only the fees paid by
the funds during the one-year period immediately preceding the initiation of the action.  *See id.* at
598.  Second, Section 36(b) is limited to compensation received by an investment adviser and its
affiliates; therefore, Rule 12b-1 fees, brokerage commissions, and soft dollar payments made to
unaffiliated third parties cannot serve as the basis for a claim under Section 36(b).  *See id.* at 598-
601.  Third, Section 36(b) requires concrete factual allegations regarding the relationship
between the compensation received by an investment adviser and the services provided in
exchange for that compensation.  *See id.* at 601-02.  Finally, allegations that an investment
adviser used advisory fees for allegedly improper purposes cannot state a claim under Section

---

[2]     The Court also stayed the claims related to Class B shares in light of *Fitzgerald v. Citigroup, Inc.*,
No. 03 Civ. 4305 (S.D.N.Y. 2003), and dismissed all of the other claims with prejudice.  *See In re
SSB*, 441 F. Supp. 2d at 609.

36(b) without some specific allegation that the fees themselves were excessive.  *See id.* at 602-03.

The Court dismissed Plaintiffs' state-law claims as preempted by SLUSA.  *See id.* at 604.  The Court concluded that "SLUSA preempts certain 'covered class actions' based upon state or local statutory or common law in any state or federal court by any private party alleging 'a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.'"  *Id.* (quoting 15 U.S.C. § 78bb(f)(1)(a)).  The Court recognized that the Supreme Court's recent decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503 (2006), compels a very broad interpretation of SLUSA's operative language and the statute's "'preemptive sweep,'" and dismissed the state-law claims with prejudice as preempted by SLUSA.  *In re SSB*, 441 F. Supp. 2d at 604 (quoting *Dabit*, 126 S. Ct. at 1514).

## STATEMENT OF PLAINTIFFS' ALLEGATIONS

Plaintiffs—five individual investors, two of whom were not named in the First Amended Complaint—filed the Second Amended Complaint on October 16, 2006.  Plaintiffs bring two claims under Section 36(b) on behalf of nine mutual funds previously managed and operated by SSB and its affiliates (the "Funds").[3]  Count I asserts a Section 36(b) claim based on allegedly excessive investment advisory fees paid by the Funds to the Investment Adviser Defendants .  (SAC ¶¶ 140-146.)  Count II asserts a Section 36(b) claim based on allegedly excessive Rule 12b-1 fees paid by the Funds to the Distributor Defendant.  (SAC ¶¶ 147-153.)

---

[3]     The nine Funds are the Smith Barney Aggressive Growth Fund, the Smith Barney Mid Cap Core Fund, the Smith Barney Large Cap Value Fund, the Smith Barney Technology Fund, the Smith Barney Appreciation Fund, the Smith Barney Large Cap Growth Fund, the Salomon Brothers Capital Fund, the Smith Barney Allocation Series – High Growth Portfolio, and the Smith Barney Premier Selections Global Growth Fund.  (SAC ¶ 1 n.1.)

In large part, Plaintiffs simply recycle the First Amended Complaint's allegations regarding brokerage commissions, soft dollars, and other payments to unaffiliated broker-dealers that the Court previously determined were insufficient to state a claim under Section 36(b). Specifically, Plaintiffs allege that Defendants made improper payments to unaffiliated broker-dealers in the form of directed brokerage, soft dollars, and revenue sharing in order to incentivize the broker-dealers to steer investors into the Funds.  (*See, e.g.*, SAC ¶¶ 61-70, 75-84.)

In an effort to disguise these previously rejected allegations as viable Section 36(b) claims against the Investment Adviser and Distributor Defendants, Plaintiffs surround them with allegations that, at least superficially, relate to the six *Gartenberg* factors that courts consider when evaluating whether a fee is excessive under Section 36(b):

- *Profitability* – Plaintiffs allege in conclusory fashion that the Investment Adviser Defendants "profited tremendously" from the Funds and cite to irrelevant financial information from Citigroup's 2004 Annual Report, but they make no allegations about the Investment Adviser Defendants' profitability from the nine Funds.  (SAC ¶¶ 33-35.)  Plaintiffs make no allegations whatsoever about the profitability of the Distributor Defendant.

- *Economies of Scale* – Plaintiffs cite to various academic and other studies that discuss potential economies of scale in the mutual fund industry and cite to information in the Funds' annual reports regarding changes in their assets under management and expense ratios over time.  Notably, Plaintiffs make no specific allegations regarding how the changes in the Funds' asset levels affected the cost to the Investment Adviser Defendants of operating the Funds or the cost to the Distributor Defendant of providing distribution services to the Funds.  (SAC ¶¶ 36-54.)

- *Comparative Fee Structures* – Plaintiffs cite data allegedly acquired from the University of Chicago's Center for Research in Securities Prices and allege that the advisory and Rule 12b-1 fees paid by the Funds were higher than the value-weighted average fees for allegedly similar mutual funds—a comparison which the Second Circuit rejected in *Amron*.  (SAC ¶¶ 55-57, 71-74.)

- *Nature and Quality of Services* – Based on unspecified load and no-load benchmarks for which no source is cited, Plaintiffs allege that the Funds performed less well than comparable funds.  Curiously, Plaintiffs ignore the

performance comparisons included in the Funds' annual reports, which were prepared by an independent third party, and they completely ignore the numerous services in addition to investment management that the Investment Adviser Defendants provide to the Funds and Fund shareholders. (SAC ¶¶ 58-60.) Moreover, Plaintiffs make no allegations about the nature and quality of the services provided by the Distributor Defendant.

- *Fall-Out Benefits* – Plaintiffs allege that the Investment Adviser Defendants and the Distributor Defendant failed to reduce their fees to reflect benefits received from directed brokerage, soft dollar payments, and transfer agency fees. Many of these alleged benefits, however, are not properly considered fall-out benefits because they would be reflected in traditional measures of fund profitability. (SAC ¶¶ 75-86.)

- *Independence and Conscientiousness of the Funds' Independent Directors* – Plaintiffs cite quotations from industry commentators about mutual fund directors generally and make various non-specific allegations about the directors' compensation, workload, and qualifications. Notably, Plaintiffs ignore the specific information about the Funds' directors that is included in the Funds' annual reports. (SAC ¶¶ 87-139.)

The Second Amended Complaint fails to state a claim under Section 36(b) for two reasons. First, there are no allegations relating to the one-year period immediately preceding the filing of the Second Amended Complaint on October 16, 2006, as required by Section 36(b). Second, regardless of the period at issue, the allegations do not state a claim for breach of fiduciary duty under Section 36(b).

## **ARGUMENT**

## I.    **THE COMPLAINT FAILS TO MAKE ALLEGATIONS RELATING TO THE ONE-YEAR DAMAGE PERIOD AS REQUIRED BY ICA SECTION 36(b)**

Plaintiffs' claims challenge conduct occurring prior to October 16, 2005—more than one year before the Second Amended Complaint was filed on October 16, 2006. However, the clear statutory text of Section 36(b) allows a plaintiff to challenge only those fees paid in the one-year period immediately preceding the filing of the complaint. Accordingly, as recently held by Judge Kram in *In re AllianceBernstein Mutual Fund Excessive Fee Litigation*, Plaintiffs'

allegations are insufficient to state a claim as a matter of law because they fail to plead specific facts that relate to the one-year time period applicable to their claims.  No. 04 Civ. 4885 (SWK), 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006) (dismissing claim under Section 36(b) because facts alleged were outside the applicable one-year period).

As the Court previously recognized, claims brought pursuant to Section 36(b) are subject to an explicit one-year limitation on damages.  *See* 15 U.S.C. § 80a-35(b)(3); *In re SSB*, 441 F. Supp. 2d at 598.  Section 36(b)(3) states, in pertinent part, that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3).  Although Plaintiffs filed their Second Amended Complaint on October 16, 2006, they purport to challenge the fees received by Defendants between May 28, 2003 and March 22, 2004, and they make numerous allegations relating to the Defendants' conduct during this period.  (SAC ¶ 1.)  In doing so, Plaintiffs seek to avail themselves of the filing date of the Original Complaint for purposes of determining the relevant one-year look-back period applicable to their Section 36(b) claims.  However, this attempt fails since neither the Original Complaint nor the First Amended Complaint constituted an "action" for purposes of determining the appropriate one-year period.  Because Plaintiffs make no allegations relating to the one-year period at issue, their Section 36(b) claims should be dismissed.

### A. Plaintiffs' Previous Complaints Did Not Comply with the Requirements of Section 36(b) for Instituting an "Action"

The relevant period for claims based upon a violation of Section 36(b) is the "one year before *the action* was instituted."  *In re SSB*, 441 F. Supp. 2d at 598 (citing 15 U.S.C. § 80a-35(b)(3)) (emphasis added).  In addition to providing a litigant with a limited time period within which to assert a claim, Section 36(b) also defines what constitutes an "action."  Specifically, under Section 36(b), an "action" can be brought only "by the Commission, or by a security

holder of such registered investment company *on behalf of such company*." 15 U.S.C. § 80a-35(b) (emphasis added).[4]  Therefore, by its own terms, an "action" under Section 36(b) is defined as one that is brought by either (1) the SEC, or (2) a security holder *derivatively* on behalf of the fund at issue.[5]

In light of this clear language, many courts—including this Court—have held that to properly bring an "action" under the language of Section 36(b), a shareholder must assert a *derivative* claim on behalf of the subject fund.  Indeed, this Court has dismissed Section 36(b) claims when they were improperly brought as class actions.  *See In re SSB*, 441 F. Supp. 2d at 597 (dismissing Section 36(b) claim for failure to assert it derivatively on behalf of the funds).[6]  As such, the term "action" as used in Section 36(b)(3) necessarily contemplates an appropriately asserted *derivative action*, not a defectively asserted and ultimately dismissed *direct* claim brought on behalf of fund investors.  Because the Section 36(b) claims previously asserted in the

---

[4]     Section 36(b) provides, in pertinent part, that:

> *An action* may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company. . . .  With respect to *any such action* the following provisions shall apply: . . . (3) . . . No award of damages shall be recoverable for any period prior to one year before *the action* was instituted.

15 U.S.C. § 80a-35(b) (emphasis added).  In so doing, Section 36(b) limits an "action" to claims asserted by specific parties acting in a representative capacity only and seeking damages for a circumscribed period.

[5]     Section 36(b) supplies the definition of an "action" for purposes of the statute's one-year look-back provision and, therefore, the Court need only review the statute itself to determine its meaning.  *See Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002) (discussing the importance of looking to plain statutory language when interpreting a statute's meaning).  Plaintiffs' previous attempts to plead a Section 36(b) claim failed to meet this clear statutory definition.

[6]     *See also, e.g.*, *In re American Mut. Funds Fee Litig.*, No. CV-04-5593-GAF (RNBx), 2005 WL 3989803, at *3 (C.D. Cal. Dec. 16, 2005); *In re Dreyfus Mut. Funds Fee Litig.*, No. 04-0128, 2006 WL 909434, at *2-3 (W.D. Pa. Apr. 10, 2006); *In re BlackRock Mut. Funds Fee Litig.*, No. 04 Civ. 164 (TFM), 2006 U.S. Dist. LEXIS 13846, at *30-33 (W.D. Pa. Mar. 29, 2006); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 468 (D.N.J. 2005), *recons. denied*, No. 2:04CV982, slip op. (D.N.J. Dec. 28, 2005); *In re Lord Abbett Mut. Funds Fee Litig.*, 385 F. Supp. 2d 471 (D.N.J. 2005), *amended by* 407 F. Supp. 2d 616 (D.N.J. 2005).

Original and First Amended Complaints were improperly pled directly as putative class actions, neither constitutes an "action" as defined by Section 36(b) for purposes of determining the relevant one-year period.  Therefore, Plaintiffs did not institute an "action" under Section 36(b) until October 16, 2006, when they filed their Second Amended Complaint asserting Section 36(b) claims derivatively on behalf of the Funds.

This straightforward interpretation of the term "action" is mandated not only by the plain language of Section 36(b), but also by the intent of Congress to limit the period in which fees are subject to challenge.[7]  *See Brever v. Federated Equity Mgmt. Co.*, 233 F.R.D. 429, 433-34 (W.D. Pa. 2005) (explaining that Congress included deliberate and calculated limitations on scope of liability imposed by Section 36(b)); *Krinsk v. Fund Asset Mgmt., Inc.*, No. 85 Civ. 8428 (JMW), 1986 WL 205, at *4 (S.D.N.Y. May 9, 1986) (finding it "evident that Congress was not intending to create a broad remedy under Section 36(b) but rather a mechanism whereby *the current level of management fees* would be policed, tested and, if necessary, rectified" (citing S. Rep. No. 184, 91 Cong., 1st Sess. at 5 (1970); H. Rep. No. 1382, 91st Cong., 2d Sess. 201 (1970))) (emphasis added).

As this Court held, it was improper for Plaintiffs to bring their prior claim under Section 36(b) directly as a class action, rather than derivatively on behalf of the subject Funds. *See In re SSB*, 441 F. Supp. 2d at 597.  Because the relevant damages period for Plaintiffs' Section 36(b) claims is one year prior to the filing of the Second Amended Complaint on

---

[7]     Congress's intent to limit the remedy available to fund investors under Section 36(b) of the 1940 Act supports a narrow interpretation of the term "action" in that statute.  In contrast, the broad preemptive purpose of SLUSA (as discussed at Section II, *infra*) supports a broad interpretation of the term in that context.

October 16, 2006, those claims must be dismissed with respect to conduct that occurred before October 16, 2005.[8]

> **B.      Plaintiffs' Allegations Relating to Conduct During the Relevant Time Period Are Insufficient to State a Claim Under Section 36(b)**

Although Plaintiffs can challenge only fees paid between October 16, 2005 and October 16, 2006—the date they first filed a derivative action under Section 36(b) on behalf of the Funds—the facts alleged in the Second Amended Complaint do not relate to this one-year period.  Therefore, Plaintiffs fail to state a claim under Section 36(b), and dismissal is warranted.

To be entitled to relief under Section 36(b), Plaintiffs ultimately must demonstrate that the challenged fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  *Amron*, 464 F.3d at 344 (citing *Gartenberg*, 694 F.2d at 928); *In re SSB*, 441 F. Supp. 2d at 599.  As the Second Circuit recently reaffirmed in *Amron*, to survive a motion to dismiss Plaintiffs must allege *facts*—as opposed to mere conclusions and bald assertions— supporting a claim under the six *Gartenberg* factors.  *See Amron*, 464 F.3d at 343-44.  Plaintiffs' claims under Section 36(b) fail to meet this standard.

The failure to allege facts that would establish a breach of fiduciary duty arising from the receipt of excessive compensation paid during the applicable one-year time period is

---

[8]      Plaintiffs may not avail themselves of the "relation back" provision of Rule 15(c) of the Federal Rules of Civil Procedure for two reasons.  First, Section 36(b)'s one-year look-back period is a substantive provision that cannot be modified by Rule 15(c) without violating the Rules Enabling Act.  *See* 28 U.S.C. § 2072(b).  Second, the Second Amended Complaint does not satisfy the requirements of Rule 15(c).  *See Mayle v. Felix*, 125 S. Ct. 2562, 2572 (2005).  Similarly, Plaintiffs may not invoke principles of tolling to challenge fees paid during a period other than the one-year period immediately preceding the filing of the Second Amended Complaint.  *See Krinsk*, 1986 WL 205 at *4 (noting that the statutory language of Section 36(b) evidences a "substantive limit on damages rather than a procedural limitation on the time within which an action may be brought" and that "[e]quitable tolling is less favored when the limitations period is substantive").

grounds for dismissal.  Judge Kram's decision in *AllianceBernstein* is directly on point.  In *AllianceBernstein*—one of the more than twenty copy-cat actions brought by the same plaintiffs' counsel and alleging virtually identical claims against the AllianceBernstein-branded family of mutual funds—the Court originally dismissed all of the plaintiffs' claims except the claim brought pursuant to Section 36(b).  *See In re AllianceBernstein Mut. Fund Excessive Fee Litig*., No. 04 Civ. 4885 (SWK), 2005 WL 2677753, at *10 (S.D.N.Y. Oct. 19, 2005).  Defendants petitioned the Court for rehearing on this lone surviving claim, arguing that the allegations relied upon by the Court in sustaining plaintiffs' Section 36(b) claim were based on facts largely outside the time period at issue and, therefore, failed to satisfy Rule 8's pleading standard.  *See AllianceBernstein*, 2006 WL 74439, at *2.  The Court agreed, and dismissed plaintiffs' claim under Section 36(b), holding that because the facts alleged in the complaint were outside the applicable one-year period, they were insufficient to support a Section 36(b) claim.  *See id.*

        Here, as in *AllianceBernstein*, virtually every one of the allegations in support of Plaintiffs' Section 36(b) claims relate to a period more than one year prior to the filing of the Second Amended Complaint on October 16, 2006, and thus are outside the relevant one-year period.  For example, the specific allegations in the Second Amended Complaint concerning:  the Salomon Brothers Capital Fund relate to 2001–2004 (SAC ¶¶ 48, 50, 51, 53, 56, 58, 73); the Smith Barney Aggressive Growth Fund relate to 2002–2004 (SAC ¶¶ 42, 50, 51, 53, 56, 58, 73); the Smith Barney Appreciation Fund relate to 2001–2004 (SAC ¶¶ 46, 50, 51, 53, 56, 58, 73); the Smith Barney Large Cap Growth Fund relate to 2000–2004 (SAC ¶¶ 47, 50, 53, 56); the Smith Barney Large Cap Value Fund relate to 2002–2004 (SAC ¶¶ 44, 50, 51, 53, 56, 58, 73); the Smith Barney Mid Cap Core Fund relate to 2000–2004 (SAC ¶¶ 43, 50, 51, 53, 56, 58, 73); the Smith Barney Premier Selections Global Growth Fund relate to 2004 (SAC ¶¶ 50, 51, 53, 56,

58, 73); and the Smith Barney Technology Fund relate to 2002–2004 (SAC ¶¶ 45, 50, 51, 53, 56, 58, 73).  Because Plaintiffs do not allege facts relating to the relevant time period—October 16, 2005 through October 16, 2006—their claims should be dismissed.

## II.    ALTERNATIVELY, PLAINTIFFS ARE PRECLUDED FROM CONTINUING THE INSTANT ACTION UNDER SECTION 36(b) BECAUSE THE PRIOR ACTION WAS PREEMPTED BY SLUSA

Even if the Court finds that Plaintiffs' previous pleadings constituted an "action" as contemplated by Section 36(b)(3), then that finding itself compels dismissal of the action under SLUSA.  Plaintiffs initiated their previous complaint as a putative class action, asserting both state-law claims and several causes of action under federal law, including Section 36(b). Under SLUSA, and as confirmed by recent case law directly on point, once this Court determined that the First Amended Complaint contained claims preempted by SLUSA, the entire class action was required to be dismissed *in toto*, including the claims under Section 36(b). Therefore, because the entire "covered class action" was, in effect, dismissed when the Court determined that certain claims were preempted by SLUSA, Plaintiffs must file an entirely new action, and their Second Amended Complaint is a nullity.  Accordingly, Plaintiffs cannot avail themselves of the one-year look-back period that would have been applicable had their previous "covered class action"—which included their Section 36(b) claims—not been dismissed pursuant to SLUSA.

In addition to precluding a private litigant from asserting certain prescribed state-law claims, SLUSA provides for the dismissal of the *entire* class action once it is determined that a complaint contains one or more SLUSA-preempted claims.  This is required by SLUSA, which speaks in terms of dismissal of the entire "covered class action," rather than dismissal of mere "claims," "counts," or "allegations" of that covered class action.  In this respect, SLUSA states:

> No **covered class action** based upon the statutory or common law
> of any State or subdivision thereof **may be maintained** in any State
> or Federal court by any party alleging . . . a misrepresentation or
> omission of a material fact in connection with the purchase or sale
> of a covered security; or . . . that the defendant used or employed
> any manipulative or deceptive device or contrivance in connection
> with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1) (emphasis added).  In turn, SLUSA defines the phrase "covered class action" as one encompassing "any single **lawsuit**" or any "group of **lawsuits**" that meet certain prescribed class action requirements.  *See* 15 U.S.C. § 78bb(f)(5)(B)(i)-(ii) (emphasis added).[9] Crucially, SLUSA does not define "covered class action" in terms of individual claims.

Thus, even if Plaintiffs' previous complaint qualified as an "action" under Section 36(b)—and it did not—that "action" was subject to dismissal in its entirety (as *Lord Abbett* has now shown), thereby ending the litigation.  *See Am. Nat'l Bank Trust v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 874-75 (7th Cir. 2005) ("[U]nlike the dismissal of a complaint, which can ordinarily be amended, the dismissal of the entire class action ends the litigation . . . whether the suit is dismissed with prejudice or without prejudice . . . .").  Plaintiffs therefore

---

[9]    According to SLUSA:

> The term "**covered class action**" means—
> > (i) any **single lawsuit** in which—
> > > (I) damages are sought on behalf of more than 50 persons or prospective class
> > > members, and questions of law or fact common to those persons or members of
> > > the prospective class, without reference to issues of individualized reliance on an
> > > alleged misstatement or omission, predominate over any questions affecting only
> > > individual persons or members; or
> > > (II) one or more named parties seek to recover damages on a representative basis
> > > on behalf of themselves and other unnamed parties similarly situated, and
> > > questions of law or fact common to those persons or members of the prospective
> > > class predominate over any questions affecting only individual persons or
> > > members; or
> > (ii) any group of **lawsuits** filed in or pending in the same court and involving common
> > questions of law or fact in which—
> > > (I) damages are sough on behalf of more than 50 persons; and
> > > (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action
> > > for any purpose.

15 U.S.C. § 78bb(f)(5)(B) (emphasis added).

cannot avail themselves of the one-year look-back period that would have applied to their Section 36(b) claim had they properly asserted that Section 36(b) claim derivatively on behalf of the subject funds in their First Amended Complaint.

Congress intended SLUSA to be construed broadly. *See, e.g.*, *Dabit*, 126 S. Ct. at 1513-14 ("The presumption that Congress envisioned a broad construction [for SLUSA] follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment."); *Lord Abbett*, 2006 WL 3483946, at *5 ("[T]he commonly understood definition of the word 'action,' as used in the phrase 'covered class action,' further signals Congress's intent to broadly define SLUSA's preemptive scope."). Allowing Plaintiffs to avail themselves of the earlier one-year period that may have applied had their entire class action not been dismissed by operation of SLUSA's preemption provisions would circumvent SLUSA and ignore Congress's efforts to provide a "broad construction" of SLUSA's preemptive powers. *Dabit*, 126 S. Ct. at 1513 (recognizing that "Congress envisioned a broad construction" of SLUSA); *Patenaude v. Equitable Life Assurance Soc'y of the U.S.*, 290 F.3d 1020, 1025 (9th Cir. 2002) ("[T]he statutory context and legislative history buttress the broad reach of SLUSA's plain language.").

Directly on point is the recent decision in *Lord Abbett*, another of the copy-cat actions brought by plaintiffs' counsel, which has a procedural history virtually identical to that here. In *Lord Abbett*, the court originally dismissed all of plaintiffs' claims with prejudice, including plaintiffs' state-law claims, as preempted under SLUSA, but it gave plaintiffs limited leave to replead their Section 36(b) claim derivatively. *See Lord Abbett*, 2006 WL 3483946, at *1-2 (discussing procedural history of case). Defendants petitioned the court for rehearing, arguing that the court's dismissal of plaintiffs' state-law claims as preempted by SLUSA

15

mandated dismissal of the class action *in toto*.  After initially denying defendants' motion, upon reconsideration, the court vacated its prior ruling allowing plaintiffs to replead their Section 36(b) claim.  The court did this notwithstanding the fact that plaintiffs had already filed an amended complaint pursuant to the court's earlier decision and the parties had fully briefed defendants' motion to dismiss that amended complaint.

Citing the plain language of SLUSA, the court held that the statute explicitly provided for the preemption of "actions"—not claims—and held that Congress's use of the word "action" was intentional.  Moreover, the court found that such a plain language reading was consistent with the Supreme Court's recent decision in *Dabit* detailing the breadth of SLUSA's preemptive scope and Congress's intent to provide broad remedial measures.  *See id.* at *6 (citing *Dabit*, 126 S. Ct. at 1513).  The court found that allowing plaintiffs to amend their complaint to pursue a Section 36(b) claim derivatively would "violate[] the plain language of SLUSA."  *Id.* at *8.  Accordingly, the court held that its previous determination that plaintiffs' state-law claims were preempted by SLUSA required dismissal of the entire class action, and it dismissed the repleaded Section 36(b) claim with prejudice.[10]

Here, just as in *Lord Abbett*, the Court's previous dismissal of Plaintiffs' state-law claims as preempted by SLUSA should have resulted in the dismissal of the entire "class action," including Plaintiffs' Section 36(b) claim.  Plaintiffs' claim pursuant to Section 36(b) in the Second Amended Complaint is therefore legally insufficient, and dismissal with prejudice is warranted.

---

[10]    The court rejected plaintiffs' argument that this application of SLUSA was "draconian" because it would prevent them from asserting a Section 36(b) claim with respect to the one-year period that was the subject of their previously dismissed complaint.  *Id.* at *7.  In so doing, the court noted that Congress intended SLUSA to have a "broad preemptive sweep," and that plaintiffs could have avoided the allegedly "draconian" result by properly bringing their Section 36(b) claim derivatively from the outset.  *Id.*

**III.    REGARDLESS OF THE APPLICABLE TIME PERIOD, PLAINTIFFS'
ALLEGATIONS FAIL TO STATE A CLAIM UNDER SECTION 36(b)**

Plaintiffs fail to allege *facts* relating to any time period that, if true, would

establish that Defendants' advisory or Rule 12b-1 fees amount to a breach of fiduciary duty

under Section 36(b).  Section 36(b) requires a plaintiff to allege that the challenged fee is "so

disproportionately large that it bears no reasonable relationship to the services rendered and

could not have been the product of arm's-length bargaining."  *In re SSB*, 441 F. Supp. 2d at 601

(quoting *Gartenberg*, 694 F.2d at 928); *Amron*, 464 F.3d at 344 (same).   Courts look to the "six

well-established factors" set out in *Gartenberg* when evaluating whether a fee is excessive under

Section 36(b):  (1) the nature and quality of services provided to fund shareholders; (2) the

profitability of the fund to the adviser-manager; (3) "fall-out benefits"; (4) economies of scale

and whether any resulting benefits have been equitably shared with fund shareholders; (5)

comparative fee structures; and (6) the independence and conscientiousness of the fund's

independent directors. *Amron*, 464 F.3d at 344 (citing *Krinsk v. Fund Asset Mgmt., Inc.*, 875

F.2d 404, 409 (2d Cir. 1989)); *In re SSB*, 441 F. Supp. 2d at 599 (citing *In re Eaton Vance Mut.*

*Funds Fee Litig.*, 380 F. Supp. 2d 222, 237 (S.D.N.Y 2005)).

In dismissing Plaintiffs' Section 36(b) claim in the First Amended Complaint, the

Court observed that "[t]he degree of specificity required to plead a § 36(b) [claim] is an

unresolved question with most courts dismissing claims for failure to allege sufficient facts

regarding the disproportionality of fees to the services rendered and a few allowing such claims

to survive based on mostly general allegations." *In re SSB*, 441 F. Supp. 2d at 601.  The Second

Circuit's recent opinion in *Amron* resolved this question, making clear that general allegations

are insufficient to state a claim under Section 36(b).  Instead, a plaintiff must allege "those facts

*necessary* to a finding of liability," namely facts that would support a finding of

disproportionality under the *Gartenberg* factors.  *Amron*, 464 F.3d at 343-44 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)).  *Amron* is consistent with opinions of other Courts of Appeals, which "have emphasized that it is insufficient to plead that the fees are excessive and that the complaint must also plead facts showing that the fees are disproportionate to the services rendered."  *In re SSB*, 441 F. Supp. 2d at 559 (citing *Migdal v. Rowe Price-Fleming Int'l, Inc*., 248 F.3d 321, 327 (4th Cir. 2001); *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140, 142 (3d Cir. 2002)).[11]  As discussed below, Plaintiffs fail to allege sufficient facts to support a finding of liability on either of their Section 36(b) claims.[12]

### A.   Plaintiffs' Allegations Against the Investment Adviser Defendants with Respect to Advisory Fees Are Insufficient to State a Claim

Plaintiffs' claim against the Investment Adviser Defendants based on their receipt of allegedly excessive advisory fees (Count I) should be dismissed because the allegations made

---

[11]   On the other hand, *Amron* is *inconsistent* with several recent decisions by District Courts outside the Second Circuit, which—although expressing reservations—have denied motions to dismiss Section 36(b) claims based on mostly general allegations.  *See Sins v. Janus Capital Mgmt*, Nos. 04-cv-01647-WDM-MEH, 04-cv-02395-MSK-CBS, 2006 WL 3746130, at *4 (D. Colo. Dec. 15, 2006) (denying motion to dismiss, but expressing concern about "number of apparently generic, boiler plate allegations"); *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862, 867 (D. Minn. 2005) (holding complaint survived motion to dismiss "by only the narrowest of margins," and limiting discovery due to concerns about basis and veracity of plaintiffs' allegations); *see also Hunt v. Invesco Funds Group, Inc.*, No. H-04-02555, 2006 WL 1581846 (S.D. Tex. June 5, 2006); *Dumond v. Mass. Fin. Servs. Co.*, No. Civ.A. 04-11458-GAO, 2006 WL 149038 (D. Mass. Jan. 19, 2006); *Jones v. Harris Assocs*, No. 04 C 8305, 2005 WL 831301 (N.D. Ill. Apr. 7, 2005); *Wicks v. Putnam Inv. Mgmt*., No. Civ.A. 04-10988-GAO, 2005 WL 705360 (D. Mass. Mar. 28, 2005); *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005).  Since all but one of these cases were decided prior to the Second Circuit's decision in *Amron*, they do not reflect the most recent guidance by the Court of Appeals for this Circuit as to the pleading standard for Section 36(b) claims.

[12]   While a court must accept the well-pleaded factual allegations in a complaint as true on a motion to dismiss, the court is not required to assume the truth of *all* allegations in the complaint.  *In re Livent, Inc. Noteholders Sec. Litig*., 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001).  Rather, the presumption of truth extends to only those allegations that are *well-pleaded*.  *See id*. at 405.  This Court has identified at least three categories of allegations that are not well-pleaded:  (1) allegations that are speculative or conclusory; (2) allegations that are contradicted by other statements in the complaint; and (3) allegations that are contradicted by documents upon which the complaint relies, other documents that are integral to the plaintiff's claims, or facts of which the court may take judicial notice.  *See id*. at 405-06.

in support of that claim are not well-pleaded, and in any event, the allegations do not support a

finding of excessiveness under Section 36(b).

        1.    <u>Profitability</u>

        Plaintiffs fail to make any specific allegations regarding the profitability of the

nine Funds to the Investment Adviser Defendants.  Instead, Plaintiffs claim that Defendants

"profited tremendously" without providing any indication as to what that profitability actually

was, how much of it was attributable to each of the nine Funds, or why whatever level of

profitability that was actually achieved was excessive.  (SAC ¶¶ 33-35.)  Although Plaintiffs

refer to the discussion in Citigroup's 2004 Annual Report regarding its asset management

businesses in general (SAC ¶¶ 34-35), they do so selectively, and the figures they cite fail to

address the Defendants' profitability *from the nine Funds* at issue in this case, which is what

*Gartenberg* requires.[13]  *See Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989)

(describing the relevant factor as "the profitability *of the fund* to the adviser-manager" (citing

*Gartenberg*, 694 F.2d at 929-30)) (emphasis added).  Citigroup operated many asset

---

[13]    Copies of Citigroup's 2004 Annual Report and the relevant annual reports for each of the nine Funds are attached to the Declaration of C. Neil Gray in Support of Defendants' Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint ("Gray Decl.").  The Court may properly consider these documents in deciding this motion because (1) Plaintiffs incorporated them by reference into the Complaint; (2) Plaintiffs relied upon them in drafting the Complaint; and/or (3) they are publicly available reports filed with the SEC.  *See In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *6 (S.D.N.Y. Apr. 18, 2006) (citing *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)); *AllianceBernstein*, 2006 WL 74439, at *2 n.4 (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Livent*, 151 F. Supp. 2d at 404 (citing *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

management businesses in addition to the nine Funds, and the information in the Annual Report relates to all of those businesses—not just the nine Funds at issue here.[14]

Even if the information were limited to the nine Funds, it would not suffice as an allegation of excessive profitability.  Net income data is irrelevant without some allegation regarding the corresponding costs, which Plaintiffs do not make.  *See Amron*, 464 F.3d at 344-45.  Likewise, merely alleging that assets under management in one distribution channel increased says nothing about profitability.  Finally, read in its entirety, the Annual Report contradicts Plaintiffs' suggestions that assets under management and profitability increased during the 2003–2004 period.  In fact, assets under management and net income both *decreased* during the 2003–2004 period.  *See* Gray Decl., Ex. 1 at 19, 24.

In sum, Plaintiffs fail to make allegations that relate to the profitability of the nine Funds at issue, and their generalized allegations about Defendants' overall income or asset levels are insufficient as a matter of law.[15]

      2.   <u>Economies of Scale</u>

Plaintiffs' allegations with respect to economies of scale are also insufficient, for two independent reasons.  First, Plaintiffs fail to adequately allege that the Investment Adviser Defendants realized economies of scale in managing the nine Funds.  Second, even if they had

---

[14]    For example, the Annual Report mentions the following asset management businesses, among others:  separately managed accounts, which are private portfolios managed on behalf of institutional investors and high-net-worth individuals; Banamex Asset Management, Citigroup's Mexico-based asset management business; CitiStreet, a global defined benefit plan provider; and Retirement Services, a retirement planning business.  *See* Gray Decl., Ex. 1 at 19.  In addition, Citigroup offered dozens of mutual funds other than the nine Funds at issue here.

[15]    Plaintiffs' Complaint also cites a magazine article that purports to calculate the average net profit for publicly held mutual fund firms.  (SAC ¶ 33.)  This allegation says nothing about Defendants' profitability or how it compares to the industry average, and generalized allegations about industry-wide facts are insufficient to plead a claim under Section 36(b).  *Amron*, 464 F.3d at 345-46 (rejecting general industry-wide allegations about independent directors that were not specific to the funds at issue).

alleged that economies of scale were realized, Plaintiffs fail to adequately allege that those scale economies have not been shared with the Funds' shareholders.

The term "economies of scale" describes a particular relationship between the size of a mutual fund and the cost of providing services to the fund. *See Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1237 (S.D.N.Y. 1990) ("The concept of 'economies of scale' assumes that as a mutual fund increases in size, its operational costs decrease proportionally."). Accordingly, to adequately allege the existence of economies of scale, a plaintiff must make some allegations regarding the costs to the investment adviser of managing and operating a fund and how those costs changed as the fund's assets increased over time. *See Amron*, 464 F.3d at 345 (holding that to adequately allege the existence of economies of scale, a plaintiff must make some allegations regarding "the costs of performing fund transactions or the relationship between such costs and the number of transactions performed" (citing *Krinsk*, 875 F.2d at 411)). Plaintiffs, however, make no such allegations about the Investment Adviser Defendants' management and operation of the nine Funds at issue here.

Indeed, the only mention of the Investment Adviser Defendants' costs of managing the Funds is Plaintiffs' bald assertion that Defendants minimized their research costs by sharing research across the Funds with the result that investors received relatively little diversity by investing in different funds. (SAC ¶ 52.) The Funds' annual reports belie this allegation. The annual report for each Fund discloses the securities held by the Fund at the end of its fiscal year (*see, e.g.*, Gray Decl., Ex. 15 at 13-15), and comparing the disclosures from each Fund's 2004 annual report reveals little overlap in the Funds' holdings. As shown in Exhibit A, on average, more than 80% of each Fund's holdings are distinct, and in only four of fifty-six instances are more than half of the securities held by one Fund also held by another

Fund.  Moreover, the Smith Barney Allocation Series – High Growth Portfolio is a "fund of funds," meaning that it invests in other mutual funds, not in individual securities.  *See* Gray Decl., Ex. 17 at 12.

Rather than making specific allegations about the Investment Adviser Defendants' costs of managing the nine Funds or how those costs have changed as the Funds' assets have increased over time, Plaintiffs cite various academic and other studies that discuss potential economies of scale in the mutual fund industry.  (SAC ¶¶ 36-40.)  These types of generalized industry allegations are insufficient as a matter of law.  *See Amron*, 464 F.3d at 345.

Notwithstanding their failure adequately to allege that economies of scale were even realized, Plaintiffs go on to assert in conclusory fashion that the Investment Adviser Defendants failed to share the benefits of economies of scale with fund shareholders.  (SAC ¶ 40.)  In support of this allegation, Plaintiffs state that eight of the nine Funds' expense ratios increased or remained the same as assets under management increased over time.[16]  (SAC ¶¶ 41-49.)  However, a fund's *expense ratio* reflects the total *costs paid by the fund*—and has nothing to do with the adviser's costs in managing the fund.  Moreover, Plaintiffs inexplicably analyze a different time period for each Fund, and in no instance do they analyze the 2003–2004 time period that they identify as relevant to their claims.  (SAC ¶¶ 41-49.)   As shown in Exhibit B, the expense ratios for all but one of the Funds actually *decreased* during the 2003–2004 time period.  As a result, the Funds and fund shareholders paid over $7.4 million less in fees.  Because information relating to the period that Plaintiffs identify as relevant to their claims demonstrates that Defendants shared any benefits of economies of scale through lower fees, Plaintiffs' allegations based on information from other periods cannot be credited.  *See AllianceBernstein*,

---

[16]     Plaintiffs make no such allegation regarding the Smith Barney Premier Selections Global Growth Fund.

2006 WL 74439, at *2 (dismissing Section 36(b) claim brought by some of the same plaintiffs'

counsel where information from the relevant time period undermined allegations of economies of

scale based on information from other time periods).

In any event, the fee schedules for four of the Funds include "breakpoints," which

cause their advisory fees to decrease automatically as the Funds' assets under management

increase, thereby sharing the benefits of any potential economies of scale with fund shareholders,

whether those scale economies were realized or not. *See Morgan Stanley*, 2006 WL 1008138, at

*12 n.22 (citing fund prospectuses to show that breakpoints result in sharing of economies of

scale and dismissing Section 36(b) claim brought by some of the same plaintiffs' counsel);

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1054 (S.D.N.Y. 1981)

("Clearly, the present schedule takes account of economies of scale; the rate of fees diminishes

progressively"; "[E]ven if there do exist economies of scale, the present structure of

[defendants'] fee means that its effective fee has decreased as the size of the Fund has grown."),

*aff'd*, 694 F.2d 923 (2d Cir. 1982), *cert. denied*, 461 U.S. 906 (1983).[17]

3.      Comparative Fee Structures

In support of their allegations regarding economies of scale and comparative fees,

Plaintiffs provide two charts that compare the Funds' fees to data allegedly obtained from the

University of Chicago's Center for Research in Securities Prices ("CRSP") database.  (SAC ¶¶

51, 56.)  Plaintiffs assert that the charts show the extent to which the Funds' fees exceeded

certain CRSP "benchmarks."  Plaintiffs' descriptions of the methodologies used to calculate the

CRSP benchmarks in the two charts are substantively identical; however, the results set forth in

---

[17]      *See* Gray Decl., Ex. 7 at 30; Ex. 11 at 31; Ex. 9 at 35; Ex. 3 at 157.  In addition, Citigroup Asset
Management added breakpoints to the Large Cap Growth Fund's fee schedule on August 1, 2004.
*See* Gray Decl., Ex. 5 at 19-20.

the charts are dramatically different.  (*Compare* SAC ¶ 51 & n.17, *with* SAC ¶ 56 & n.19.)  For example, one chart reports that the fees paid by the Smith Barney Technology Fund exceeded the relevant CRSP benchmark by 41 basis points, while the other chart reports that the difference was only 2 basis points.  Because these allegations are incoherent and self-contradictory, they cannot support Plaintiffs' claim, and the Court should disregard them.  *See Livent*, 151 F. Supp. 2d at 406 (refusing to credit "incoherent, self-contradictory pleadings" notwithstanding availability of alternative pleading under Rule 8(e)).

Even if the Court could consider the comparisons Plaintiffs make to the CRSP benchmarks, those allegations are insufficient to state a claim under Section 36(b).  Plaintiffs define the CRSP benchmarks as the value-weighted average fees charged by comparable funds, and they allege only that the Funds' fees exceeded the benchmarks.  (SAC ¶ 73 & n.21.)  As the Second Circuit held in *Amron*, however, merely alleging that a fund's fees exceed an industry average is "inadequate" without some additional indication of where the fund's fees fall on the distribution of fees.  *See Amron*, 464 F.3d at 345.  The implicit rationale of *Amron*'s holding is that—given the wide disparity in size of the more than 8,000 mutual funds available in the marketplace, ranging from small funds with a few million dollars in assets to exceptionally large funds with well over $100 billion in assets—a fee can be lower than the median industry fee (*i.e.*, below the fees paid by *most* comparable funds) even if it is higher than the average industry fee.  This rationale applies *a fortiori* to the CRSP benchmarks.  Because the CRSP benchmarks are value-weighted averages, they are strongly influenced by larger funds, which Plaintiffs contend would have lower fees due to economies of scale.  As a result, the Funds' fees may very well be lower than the fees for most comparable funds, even if they are higher than the *value-weighted* CRSP benchmarks.

4.      Nature and Quality of Services

Plaintiffs' allegations with respect to the nature and quality of the services provided by Defendants to the nine Funds focus exclusively on the investment performance of the Funds.  (SAC ¶¶ 58-60.)  They make no allegations whatsoever regarding the myriad other services that Defendants provide to the Funds and fund shareholders, such as fund accounting, tax reporting, dividend reinvestment, customer service representatives, periodic account statements, and other shareholder communications.  Plaintiffs' allegations are therefore insufficient because "it is the *overall* nature and quality of the services provided by the investment adviser that is at issue—not merely some small percentage of those services." *Benak v. Alliance Capital Mgmt. L.P.*, No. Civ.A. 01-5734, 2004 WL 1459249, at *8 (D.N.J. Feb. 9, 2004).

This principle derives from the legislative history of Section 36(b), which directs courts to "look at all the facts . . . , *including all services rendered to the fund* or its shareholders" when evaluating claims under Section 36(b).  *Id.* at *8-9 (quoting Sen. Rep. No. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N 4897, 4910).  Accordingly, courts have consistently dismissed Section 36(b) claims where plaintiffs base their claims exclusively or primarily on allegations that the funds performed poorly.  *See Amron*, 464 F.3d at 344 (dismissing Section 36(b) claim because "'allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive,' and Plaintiffs make scant additional showing as to the [nature and quality of services provided]" (citing *Migdal*, 248 F.3d at 327)) (internal citations omitted); *Benak*, 2004 WL 1459249, at *8-9 (same).

Moreover, Plaintiffs' allegations of underperformance during the period they identify as relevant are simply not true with respect to many of the Funds.  Each Fund's annual report includes performance information for the preceding fiscal year, including comparisons to

the Fund's benchmark or benchmarks and to funds in the same Lipper category. *See, e.g.*, Gray

Decl., Ex. 7 at 7.[18]  As shown in Exhibit C, all but one of the Funds performed better than one or

more of their benchmarks and Lipper categories during 2003 and/or 2004.  In fact, the Smith

Barney Aggressive Growth Fund performed better than its benchmark and its Lipper category

during both years.[19]  Even to the extent certain of the Funds underperformed their benchmarks

and/or Lipper categories during one or both years, that is not necessarily indicative of excessive

fees or low-quality services since "[e]ven the most knowledgeable advisers do not always

perform up to expectations . . . [and] [a]n under-achieving fund one year may be an

overachieving fund the next." *Migdal*, 248 F.3d at 327-28.

     5.    <u>Fall-Out Benefits</u>

       Notwithstanding the Court's holding that the allegations in the First Amended

Complaint regarding directed brokerage and soft dollars could not serve as the basis for a claim

under Section 36(b), *see In re SSB*, 441 F. Supp. 2d at 598-603, Plaintiffs recycle many of those

same allegations in the Second Amended Complaint.  (SAC ¶¶ 75-84.)  Although they do not

label them as such, it appears that Plaintiffs attempt to allege that Defendants' directed brokerage

---

[18]    The Lipper performance data is provided by Lipper, Inc., the leading independent provider of mutual fund tracking information, and is designed to reflect the performance of funds that pursue the same investment objective and strategy as the Fund.  Lipper's reputation in the industry depends on providing useful and accurate information to mutual fund boards, and courts evaluating mutual fund fees have repeatedly relied on Lipper for fair and accurate comparisons of mutual fund performance and fees.  *See Kalish*, 742 F. Supp. at 1229 (describing Lipper as "[a] leading source of statistics on mutual fund performance"); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962, 976 (S.D.N.Y. 1988) (citing Lipper's favorable rankings of the fund at issue and concluding, "These statistics clearly speak for themselves with respect to the quality of service provided by the Adviser").

[19]    It bears noting that Plaintiffs do not specify the source or contents of the load and no-load performance benchmarks discussed in the Second Amended Complaint.  (SAC ¶¶ 58-59.)  In any event, even using Plaintiffs' unidentified "benchmarks," the Salomon Brothers Capital Fund performed better than both purported benchmarks, and the Smith Barney Allocation Series High Growth Portfolio performed better than the no-load benchmark during the period identified as relevant by Plaintiffs.  (SAC ¶ 59.)

and soft dollar practices constitute or give rise to fall-out benefits.  Plaintiffs' effort to circumvent the Court's prior ruling by recasting these previously rejected allegations in language corresponding to one of the *Gartenberg* factors fails, since neither directed brokerage nor soft dollars constitutes or gives rise to fall-out benefits.[20]

The concept of "fall-out benefits" developed as a means of ensuring that independent directors and courts consider all sources of revenue to an investment adviser and its affiliates when evaluating the reasonableness of the fees paid by a fund.  In essence, fall-out benefits are sources of revenue that are not considered in traditional measures of fund profitability.  For example, the fall-out benefits at issue in *Gartenberg* were commissions on non-fund securities trades in brokerage accounts held by fund shareholders and interest income earned in the interim between the issuance of a redemption check to a fund shareholder and the date the check cleared.  *See Gartenberg*, 694 F.2d at 932.  Similarly, the fall-out benefits at issue in *Krinsk* were commissions on non-fund securities trades in brokerage accounts held by fund shareholders, margin interest derived from brokerage accounts held by fund shareholders, advisory fees from other funds held by fund shareholders, and profits from other products and services utilized by fund shareholders.  *See Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472, 494 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989).

In contrast, directed brokerage and soft dollar practices have not traditionally been recognized as fall-out benefits, in part because traditional measures of fund profitability would reflect most, if not all, of the benefits to the Investment Adviser from those practices.  Plaintiffs

---

[20]   Plaintiffs also recycle many of the First Amended Complaint's allegations regarding revenue sharing practices.  (SAC ¶¶ 61-70.)  As the Court previously held, these practices, in and of themselves, cannot form the basis for a Section 36(b) claim.  *See In re SSB*, 441 F. Supp. 2d at 598-603.  Moreover, Plaintiffs make no effort to show how these allegations relate to any of the *Gartenberg* factors or how they demonstrate that the Funds' fees were excessive relative to the services rendered.

allege that Defendants benefited from directed brokerage because they received the benefits of increased fund size—*i.e.*, increased advisory fees—without incurring additional distribution expenses.  (SAC ¶ 75.)  To the extent this is true, however, it would be reflected in fund profitability.  More specifically, fund profitability would increase if advisory fee revenue increased and distribution expenses remained unchanged.  Since traditional measures of fund profitability would reflect the benefits of directed brokerage, it does not constitute a fall-out benefit.

Plaintiffs also allege that Defendants benefited from soft dollars because they were able to reduce their research costs by paying for research using fund brokerage commissions.  (SAC ¶ 81.)  Once again, to the extent this conclusory allegation is true, it would be reflected in fund profitability—*i.e.*, fund profitability would increase if research costs decreased and advisory fee revenue remained unchanged.  Accordingly, the use soft dollars does not constitute a fall-out benefit.[21]

---

[21]    Plaintiffs allege that the Investment Adviser Defendants failed to reduce their fees to reflect fall-out benefits in the form of fees paid by the Funds to an affiliated transfer agent.  This lone allegation as to a single *Gartenberg* factor is insufficient to state a claim under Section 36(b).  *See Benak*, 2004 WL 1459249, at *9 (dismissing Section 36(b) claim because based only allegations related to single *Gartenberg* factor); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 565 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 202) (same).  It should also be noted that Defendants Smith Barney Fund Management and SSB entered into a settlement with the SEC whereby the *entirety of the fees* collected pursuant to the transfer agency agreement in question *were returned to the funds*.  *See In re Smith Barney Fund Mgmt.*, Exchange Act Release No. 51761 (May 31, 2005).  Moreover, Defendants' dealings with the Funds' transfer agent is the subject of on-going litigation before Judge Pauley.  *See In re Smith Barney Transfer Agent Litig.*, No 05 Civ. 7583 (WHP) (S.D.N.Y. filed Oct. 11, 2005).  To conserve judicial resources and avoid the expense and inconvenience of having to defend against related claims involving similar parties in the same forum, this Court should stay Plaintiffs' claims regarding Defendants' dealings with the Funds' transfer agent pending resolution of the action before Judge Pauley.

    6.    <u>Independence and Conscientiousness of the Funds' Independent Directors</u>

Despite discussing the issue for more than fifty paragraphs, Plaintiffs fail to make a single legally sufficient allegation concerning the independence and conscientiousness of the Funds' independent directors.  Courts have repeatedly rejected as insufficient as a matter of law allegations similar to the types of allegations Plaintiffs make here, such as quotations from industry commentators (*see, e.g.*, SAC ¶ 138) and conclusory allegations regarding the directors' compensation and workload (SAC ¶ 136).  *See Amron*, 464 F.3d at 345-46.  In addition, Plaintiffs' allegation that "some" of the independent directors lacked the financial experience necessary to fulfill their duties (SAC ¶¶ 134-135) must be disregarded as vague and conclusory since Plaintiffs fail to specify which independent directors allegedly lacked the necessary experience.[22]

Plaintiffs' remaining allegations are variations on a common theme:  if the directors had acted independently and conscientiously, they would not have approved the fees and other conduct that Plaintiffs challenge as improper.  (*See, e.g.*, SAC ¶ 137.)  This conclusory and circular reasoning cannot overcome the Investment Company Act's presumption that the Funds' directors were independent.  *See* 15 U.S.C. § 80a-2(a)(9) ("[A] natural person shall be presumed not to be a controlled person . . . ."); *see also Amron*, 464 F.3d at 344 ("[A] plaintiff's 'burden to overcome this presumption is a heavy one.'" (quoting *Strougo v. BEA Assocs.*, 188 F. Supp. 2d 373, 380-81 (S.D.N.Y. 2002))).

---

[22]    Tellingly, although the Funds' annual reports identify the independent directors and provide background information about each of them (*see, e.g.*, Gray Decl., Ex. 15 at 26), Plaintiffs do not cite to any of these documents as support for their allegation that the directors are not qualified. This omission is probably not accidental, as the Funds' independent directors include professors from the Harvard Business School and the University of North Carolina, several senior-level executives from investment management firms and other businesses, and other eminently qualified individuals.  *See* Gray Decl., Ex. 3 at 177-79; Ex. 5 at 25-26; Ex. 7 at 36; Ex. 9 at 44; Ex. 11 at 38; Ex. 13 at 43; Ex. 15 at 26; Ex. 17 at 93; Ex. 19 at 42.

**B.**  **Plaintiffs' Allegations Against the Distributor Defendant with Respect to Rule 12b-1 Fees Are Also Insufficient to State a Claim**

Plaintiffs' claim against the Distributor Defendant based on allegedly excessive Rule 12b-1 fees (Count II) also should be dismissed for similar reasons.  As an initial matter, Plaintiffs make no allegations with respect to the nature and quality of the distribution services provided by the Distributor Defendant or the profitability to the Distributor Defendant of providing those services.  With respect to the remaining *Gartenberg* factors, Plaintiffs' allegations against the Distributor Defendant are similar—and, in many cases, identical—to their allegations against the Investment Adviser Defendants.  For the same reasons discussed above, these allegations are insufficient to support a finding of excessiveness under Section 36(b).  Accordingly, Plaintiffs' claim against the Distributor Defendant should be dismissed.

1.  <u>Nature and Quality of Services</u>

Plaintiffs make no specific allegations regarding the nature and quality of the distribution services provided to the Funds by the Distributor Defendant.  This omission is particularly glaring given that Plaintiffs ultimately must prove that the Rule 12b-1 fees are "so disproportionately large that [they] bear[] no reasonable relationship *to the services rendered* . . . ."  *Gartenberg*, 694 F.2d at 928 (emphasis added).  Moreover, Plaintiffs' claims are premised on allegations that the distribution services provided to the Funds by SSB were successful.  Specifically, the Complaint repeatedly alleges that SSB, acting as the Funds' distributor, caused broker-dealers to promote sales of the Funds' shares, with the result that the Funds increased in size.  (*See, e.g.*, SAC ¶¶ 3, 69.)  In light of these allegations, Plaintiffs cannot contend that the services provided to the Funds by the Distributor Defendant were not effective.

2.    <u>Profitability</u>

Plaintiffs make no allegations whatsoever regarding the profitability to the Distributor Defendant of providing distribution services to the Funds.  Indeed, none of Plaintiffs' allegations regarding profitability specifically mentions the Distributor Defendant.  (*See* SAC ¶¶ 33-35.)  Moreover, as discussed above, Plaintiffs' allegations regarding the net income and assets under management of Citigroup's asset management businesses are insufficient for purposes of Section 36(b).

3.    <u>Economies of Scale</u>

With respect to economies of scale, Plaintiffs make only two allegations that can be read as pertaining to the Distributor Defendant, and both of those allegations are highly conclusory.  First, they allege that "the growth of assets under management by the Investment Adviser Defendants has generated substantial economies of scale to the great benefit of the Investment Adviser and Distributor Defendant, which have not been passed on to the Funds and their investors through lower expense ratios."  (SAC ¶ 40.)  Second, they allege  that "Defendants failed to pass on to the Funds the benefits of any economies of scale generated by the increase in Fund size."  (SAC ¶ 144.)  These two highly conclusory allegations are insufficient.

As discussed above, to adequately allege the existence of economies of scale, a plaintiff must make some allegations regarding the costs of providing services to the fund and how those costs changed as the fund's assets increased over time.  *See Amron*, 464 F.3d at 345 (finding allegations with respect to Rule 12b-1 fees insufficient because complaint made "no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed").  Plaintiffs, however, allege no such facts with respect to SSB in its role as the Funds' distributor.  Indeed, the Complaint is silent as to how the

cost to SSB of providing distribution services to the Funds changed as the Funds' assets increased over time.  Without any such pleaded facts, Plaintiffs' economies of scale allegations are wholly inadequate.

Similarly, Plaintiffs offer absolutely no support for their conclusory allegation that the Distributor Defendant failed to pass on the benefits of economies of scale.  Accordingly, this allegation is also insufficient under Section 36(b).  *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("[B]ald assertions and conclusions of law will not suffice.").

        4.      <u>Comparative Fee Structures</u>

Plaintiffs assert that the Distributor Defendant charged Rule 12b-1 fees that were higher than the Rule 12b-1 fees paid by comparable funds.  (SAC ¶¶ 73-74.)  To support this allegation, Plaintiffs cite certain CRSP "benchmarks."  As with their allegations regarding advisory fees, Plaintiffs define the CRSP benchmarks as the value-weighted average Rule 12b-1 fees charged by comparable funds, and they allege only that the Funds' Rule 12b-1 fees exceeded the benchmarks.  (SAC ¶ 73 & n.21.)  As discussed above, under clear Second Circuit precedent, merely alleging that a fund's fees exceed an industry average is "inadequate" without some additional indication of where the fund's fees fall on the distribution of fees.  *See Amron*, 464 F.3d at 345.

        5.      <u>Fall-Out Benefits</u>

Plaintiffs allege that the Distributor Defendant's directed brokerage practices constituted or gave rise to fall-out benefits because the Distributor Defendant received the benefits of increased fund size—*i.e.*, increased Rule 12b-1 fees—without incurring additional distribution expenses.  (SAC ¶¶ 75.)  To the extent this is true, it would be reflected in traditional measures of the Distributor Defendant's profitability from providing services to the Funds—*i.e.*, the Distributor Defendant's profitability would increase if revenue increased and expenses

remained unchanged.  Accordingly, for the same reasons discussed above, directed brokerage

should not be regarded as a fall-out benefit to the Distributor Defendant.

> 6. <u>Independence and Conscientiousness of the Funds' Independent Directors</u>

As discussed above, Plaintiffs' allegations as to the independence and

conscientiousness of the Funds' independent directors are insufficient as a matter of law.

## IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Second Amended Complaint should be dismissed with prejudice because

Plaintiffs' counsel were on notice of the deficiencies in their Section 36(b) claims when they

filed the Second Amended Complaint.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 403 F.

Supp. 2d 310, 319 (S.D.N.Y. 2005) (denying leave to amend "[i]n light of the plaintiffs' failure

to cure the defects after being provided notice"); *Adler v. Berg Harmon Assocs.*, 816 F. Supp.

919, 925 (S.D.N.Y. 1993) (dismissing claim with prejudice because court's "prior decision not

only gave plaintiffs' counsel the opportunity to correct its defective pleading, but also offered

significant guidance on how to do so"); *Benak*, 2004 WL 1459249, at *10 (dismissing action

with prejudice where plaintiff was on notice of deficiencies but failed to cure them).  Here,

Plaintiffs' counsel were put on notice of the deficiencies in their Section 36(b) claims by the

Court's decision dismissing the First Amended Complaint, which detailed the pleading standards

for Section 36(b) claims, *see In re SSB*, 441 F. Supp. 2d at 598-603; the Second Circuit's

decision in *Amron*, which reaffirmed those pleading standards, *see generally Amron*, 464 F.3d

338; as well as by numerous decisions dismissing substantially similar actions brought by certain

of the same Plaintiffs' counsel.  *See, e.g.*, *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp.

2d 222, 237-38 (S.D.N.Y.), *recons. denied*, 403 F. Supp. 2d 310, 314-16 (S.D.N.Y. 2005); *In re*

*Davis Selected Mut. Funds Litig.*, No. 04 Civ. 4186 (MGC), 2005 WL 2509732, at *3 (S.D.N.Y.

Oct. 11, 2005); *AllianceBernstein*, 2006 WL 74439, at *2-3; *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *7-10 (S.D.N.Y. Jan. 17, 2006); *Morgan Stanley*, 2006 WL 1008138, at *12-13.  Despite having been afforded three opportunities to do so, Plaintiffs have again failed to state a claim under Section 36(b).  Three bites at the apple is more than enough.  Accordingly, the Second Amended Complaint should be dismissed with prejudice.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss the Second Amended Complaint in its entirety.  Because Plaintiffs have had multiple opportunities to attempt to plead a cause of action under Section 36(b) and they have failed to do so, the dismissal should be *with prejudice*.

Dated: January 12, 2007
      New York, New York

                              MILBANK, TWEED, HADLEY & McCLOY LLP

                              By:  /s/ James N. Benedict_____
                                   James N. Benedict (JB-6240)
                                   Sean M. Murphy (SM-8717)
                                   C. Neil Gray (CG-9038)
                                   L. Anthony Pellegrino (LP-2270)
                                   Andrew W. Robertson (AR-2437)
                          1 Chase Manhattan Plaza
                          New York, NY  10005-1413
                          (212) 530-5127

                          *Attorneys for Defendants*