UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
                                                       04 Civ. 4055 (PAC)
In re SALOMON SMITH BARNEY MUTUAL    :           04 Civ. 4296 (PAC)
FUND FEES LITIGATION                                   04 Civ. 4480 (PAC)
                                                :      04 Civ. 5289 (PAC)

                                                :      DECISION AND ORDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

On October 16, 2006, Plaintiffs filed their Second Consolidated Amended Complaint ("SAC") against the investment advisors and distributors of nine individual Salomon Smith Barney mutual funds,[1] alleging that Defendants charged excessive fees to mutual fund shareholders in violation of Section 36(b) of the Investment Company Act of 1940 ("ICA").[2] See 15 U.S.C. § 80a-35(b) (1997). Defendants move to dismiss the SAC with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] The Court grants Defendants' motion.

---

[1] The mutual funds are: Salomon Brothers Capital Fund; Smith Barney Large Capitalization Growth Fund; Smith Barney Aggressive Growth Fund; Smith Barney Appreciation Fund; Smith Barney Large Capitalization Value Fund; Smith Barney Mid Cap Core Fund; Smith Barney Technology Fund; Smith Barney Premier Selections Global Growth Fund (a/k/a Smith Barney Global All Cap Growth and Value Fund); and Smith Barney Allocation Series Fund—High Growth Portfolio (a/k/a Smith Barney High Growth Portfolio) (collectively, the "Funds"). (SAC ¶ 1 n.1.)

[2] In its decision in this matter of July 26, 2006, the Court dismissed Plaintiffs' First Consolidated Amended Class Action Complaint, which made more comprehensive allegations of improper fee- and revenue-sharing at SSB and asserted thirteen separate claims for relief under various state and federal provisions. In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 582 (S.D.N.Y. 2006). The Court granted Plaintiffs limited leave to replead their § 36(b) claim as a derivative, rather than direct, action, id. at 597, resulting in the present SAC.

[3] Defendants also moved to dismiss the SAC under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f) (Supp. 2007). They claimed that when a complaint is filed containing any claim preempted by SLUSA, all other claims, including valid federal statutory claims clearly outside of the scope of SLUSA preemption, also must be dismissed without leave to amend. On this theory, when the Court dismissed Plaintiffs' state-law claims in its previous decision, In re SSB, 441 F. Supp. 2d at 603-04, it should have dismissed the entire action. At oral argument, counsel for Defendants recognized the futility of that position: "[O]n SLUSA, the weight of authority is against me. I don't think I have anything to add. There are five decisions directly on point." (Hr'g Tr. 4, Nov. 27, 2007.) Accordingly, Defendants' motion on this ground is denied.

## I. STANDARD OF REVIEW

In a Rule 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). A pleading is sufficient if plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (citations omitted). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

## II. FACTS ALLEGED IN THE SAC[4]

### A. The Parties

Plaintiffs are five individual investors, LuAnn Beyer, Chanda Maxwell, Ryan Maxwell, Tony C. Evans, and Michelle Gomez (SAC ¶¶ 11-16), who held shares in the Funds during the relevant timeframe of May 28, 2003 through March 22, 2004 (SAC ¶ 1). Count I of the SAC asserts a § 36(b) claim against four corporate affiliates that operated, managed, and provided advisory services for the Funds: Citigroup Asset Management ("CAM"), Salomon Smith Barney, Inc. ("SSB"), Salomon Brothers Asset Management, Inc., and Smith Barney Fund

---

[4] The allegations set out in the SAC are taken as true for the purpose of this motion.

2

Management LLC (collectively, the "Investment Adviser Defendents").[5] (SAC ¶¶ 17-21, 140-46.)  Count II asserts a § 36(b) claim against SSB in its capacity as a distributor of the Funds (referred to as the "Director Defendant"). (SAC ¶¶ 22-23, 147-53.)

**B.  The Claimed Wrongdoing**

The SAC alleges that from May 28, 2003 to March 22, 2004, Defendants charged the Funds excessive fees that were disproportionate and not reasonably related to the services for which the fees were ostensibly charged. (SAC ¶¶ 1, 25-31.)  Plaintiffs allege four types of fees: investment advisory fees; Rule 12b-1 fees; transfer agency fees; and administrative fees. (SAC ¶¶ 26-29.)

Investment advisory fees are paid to the investment advisors to cover portfolio management expenses, such as making strategic investment decisions. (SAC ¶ 26.)  Rule 12b-1 fees cover marketing and sales costs, including compensation for brokers, advertising payments, and the cost of publishing literature for new and potential investors. (SAC ¶ 27.)  Transfer agency fees are paid to either an affiliated or independent third party "to handle sales and redemptions of fund shares, to maintain shareholder records, to compute the net asset value . . . of the fund daily, and to pay out dividends and capital gains." (SAC ¶ 28.)  Finally, administrative fees are "paid by funds to cover the cost of responding to investor inquiries, providing investors with information about their investments, and other services required to enable the functioning of the fund." (SAC ¶ 29.)

---

[5] Citigroup Asset Management ("CAM") is a group of investment affiliates of Citigroup, which are provided by Salomon Brothers Asset Management, Inc., Smith Barney Asset Management, Citibank Global Asset Management, and Citigroup Asset Management Limited. (SAC ¶ 17.)  Salomon Smith Barney, Inc. is a registered investment advisor under the Investment Advisers Act and a registered broker-dealer employing a nationwide network of brokers and financial advisors that sold the Funds to Plaintiffs. (SAC ¶ 18.)  SSB also managed the Funds' distribution plans. (SAC ¶ 21.)  Salomon Brothers Asset Management is a registered investment adviser under the Investment Advisers Act and managed and advised the Funds. (SAC ¶ 19.)  Smith Barney Fund Management LLC is a registered investment adviser and managed and advised the Funds. (SAC ¶ 20.)

As the Funds under Defendants' control grew substantially, Plaintiffs allege that Defendants failed to pass along the economies of scale generated by such growth in the form of reduced investor fees. (SAC ¶¶ 3-4.)  According to the SAC, "[i]n theory, as a particular fund's total assets grow, the expenses borne by that fund would be spread out and shared amongst fund investors, so that each investor's pro rata share of the fund's expenses is correspondingly diminished." (SAC ¶ 36.)  The alleged economies of scale windfall to investors generated by the increase in assets under management never materialized; in fact, Plaintiffs offer statistics that demonstrate that the expense ratios for these Funds either increased, remained constant, or decreased only slightly, despite the increase in net assets. (SAC ¶¶ 41-54.)

Plaintiffs allege that the fees were excessive in other ways.  First, the Defendants' funds underperformed relative to comparable mutual funds, demonstrating that the higher fees paid by the Funds' customers did not translate into superior investment advice. (SAC ¶¶ 58-60.)  Next, Plaintiffs contend that the higher fees were charged to offset the cost of Defendants' participation in revenue-sharing programs. (SAC ¶¶ 61-70.)  Finally, the Distributor Defendant, as the recipient of 12b-1 fees, took no steps to ensure that the fees charged were reasonably related to the services provided to the Funds or their investors. (SAC ¶¶ 71-72.)  Indeed, Plaintiffs point to information demonstrating that, by and large, the Funds charged higher 12b-1 fees than peer funds (SAC ¶¶ 73-74.)

As a result of the Defendants' breach of fiduciary duty, Plaintiffs contend that the Funds incurred millions of dollars in damages. (SAC ¶¶ 140-53.)  Plaintiffs seek compensatory damages on behalf of the Proprietary Funds for all damages sustained as a result of Defendants' wrongdoing; rescission of the Funds' contracts with the Investment Adviser Defendants and

recovery of all fees paid to those Defendants pursuant to such agreements; and an order enjoining Defendants from charging excessive fees as alleged in the SAC.

## III. DISCUSSION

Defendants move to dismiss the § 36(b) claims on the ground that they fail to state a cause of action. Section 36(b) provides, in relevant part, that:

> the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.

15 U.S.C. § 80-35(b). As noted previously, Plaintiffs assert § 36(b) claims against both the Investment Advisor Defendants (SAC ¶¶ 140-46) and the Distributor Defendant (SAC ¶¶ 147-53).

### A. The Gartenberg Factors

A fee which "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining" violates § 36(b) of the ICA. Gartenberg v. Merrill Lynch Asset Mgmt., 694 F.2d 923, 928-29 (2d Cir. 1982), cert. denied, 461 U.S. 906, 103 S. Ct. 1877, 76 L. Ed. 2d 808 (1983) (citations omitted). To determine whether a fee is "so excessive as to constitute a 'breach of fiduciary duty,'" id. at 930, courts consider six factors: (i) the nature and quality of the services provided by the advisers to the shareholders; (ii) the profitability of the mutual fund to the adviser-manager; (iii) "fall-out" benefits; (iv) the economies of scale achieved by the mutual fund and whether such savings are passed on to the shareholders; (v) comparative fee structures with other similar funds; and (vi) the independence and conscientiousness of the mutual fund's outside directors, In re Eaton Vance Mutual Funds Fee Litigation, 380 F. Supp. 2d 222, 237 (S.D.N.Y. 2005) (citing

5

Gartenberg, 694 F.2d at 929-30) (the "Gartenberg Factors"); see also Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir.1989) (reciting Gartenberg factors); In re Scudder Mut. Funds Fee Litig., No. 04 Civ. 1921 (DAB), 2007 WL 2325862, at *13 (S.D.N.Y. Aug. 14, 2007) (same); In re Evergreen Mut. Funds Fee Litig., 240 F.R.D. 115, 116-17 (S.D.N.Y. 2007) (same); In re SSB, 441 F. Supp. 2d at 599 (same).

In Amron v. Morgan Stanley Investment Advisors Inc., 464 F.3d 338 (2d Cir. 2006), the Second Circuit affirmed a district court's dismissal of a § 36(b) claim under Rule 12(b)(6). It did so after assessing whether the two complaints in that case alleged facts sufficient to satisfy each Gartenberg factor.[6] Id. at 344-45. After a factor-by-factor analysis, the Second Circuit concluded that the plaintiffs did not "set forth those facts necessary to a finding that the fees were excessive," because they alleged no "facts pertinent to the relationship between fees and services." Id. at 344.

Amron's pleading requirements for § 36(b) complaints were applied in two recent Southern District opinions. On February 5, 2007, Judge Sweet refused to grant plaintiffs leave to replead their § 36(b) claim derivatively, finding that the plaintiffs proposed second amended derivative complaint failed to allege facts sufficient under Amron "to support even one of the Gartenberg factors." 240 F.R.D. at 122.[7] On August 14, 2007, Judge Batts concluded that plaintiffs failed to allege facts that would support a claim of excessive fees under Amron and, accordingly, dismissed the § 36(b) claim. Scudder, 2007 WL 2325862, at *18. Likewise,

---

[6] In Amron, the Second Circuit resolved the debate, described in this Court's previous opinion, as to what degree of factual specificity is required for a § 36(b) claim to survive a motion to dismiss. See In re SSB, 441 F. Supp. 2d at 601-02 (comparing pre-Amron cases applying strict and liberal pleading standards).

[7] Plaintiffs' SAC either literally repeats or closely resembles large portions of the Evergreen plaintiffs' proposed second amended complaint. The similarity comes as no surprise. As the Second Circuit noted, "We cannot help but observe that the Complaints filed in this case are strikingly similar to prior claims brought—including one in this Circuit—by Plaintiffs' counsel, all of which have been dismissed." Amron, 464 F.3d at 346 n.2. Indeed, substantially the same counsel represented plaintiffs in Amron, Scudder, Evergreen, the case at bar, and a host of other mutual fund fee- and revenue-sharing litigations.

6

Plaintiffs' SAC does not meet the Amron pleading requirements and it must be dismissed pursuant to Rule 12(b)(6).

**B. Application**

    **A. Nature and Quality of the Services Provided**

In support of the first Gartenberg factor—nature and quality of services provided—Plaintiffs allege that the "performance of these Funds was not up to par with other similar funds in the industry."[8] (SAC ¶ 58.) According to Plaintiffs, this failure belies Defendants' argument that their superior quality and performance justifies their high fees. (SAC ¶ 58.) Performance is only one measure, however, and Plaintiffs fail to allege anything about the array of services offered to Fund customers, such as telephone or web assistance or the ease with which transactions are effected. Instead, they ask the Court to extrapolate deficient service from allegedly sub-standard investment returns. In Amron, the Second Circuit held that "'allegations of underperformance alone are insufficient'" to satisfy the first factor. Amron, 464 F.3d at 344 (quoting Midgal v. Rowe Price-Fleming Int'l, 248 F.3d 321, 327 (4th Cir. 2001)); see also Evergreen, 240 F.R.D. at 121 (finding against plaintiffs on this factor despite additional evidence that the funds' investment objectives indicated "passive management"). Thus, Plaintiffs' allegations fail to satisfy the first Gartenberg factor.

    **B. Profitability to the Defendants**

Plaintiffs argue that the Funds were extremely profitable to the Defendants. They cite Citigroup's 2004 Annual Report, which reported that its asset management department reported a net income of $238 million in 2004. (SAC ¶ 34.). It is not clear, however, what percentage of these profits stems from the 12b-1 and other fees charged by the Funds in 2003 as reported in the

---

[8] By Plaintiffs' own calculation, two of the nine Funds actually exceeded comparable benchmark funds during the time period. (SAC ¶ 59.)

Complaint, (SAC ¶ 50), and there is no allegation concerning the funds' operating costs. Any reference to fees is "irrelevant to a showing of profitability without some allegation of the corresponding costs incurred in operating the funds." <u>Amron</u>, 464 F.3d at 344. Finally, Plaintiffs' other allegations relating to this factor, which are based on industry-wide assessments of profitability in the mutual fund sector (i.e., an article from Forbes) (SAC ¶ 33), are exactly the type of non-Fund-specific allegations that the Second Circuit rejected in <u>Amron</u>, 464 F.3d at 345-46 (citation omitted).

### C. "Fall-Out" Benefits

Plaintiffs allege that the Defendants failed to reduce their fees to reflect benefits received from directed brokerage, soft dollar payments, and transfer agency fees. (SAC ¶¶ 75-86.) Plaintiffs make no allegations concerning the amount of fees charged but rather focus on the propriety of the fees. <u>See</u> <u>Scudder</u>, 2007 WL 2325862, at *15 ("Plaintiffs' argument that Defendants used portions of the fees as 'kickback' compensation for soft-dollar and revenue-sharing payments (the first and second alleged fall-out benefits) does not refer to the amount of fees charged but to the fees' propriety."). The § 36(b) test is basically an economic one where the improper use of fees is not "excessive per se." <u>See Eaton Vance</u>, 380 F. Supp. 2d at 237, <u>aff'd</u>, <u>Bellikoff v. Eaton Vance Corp.</u>, 481 F.3d 110, 118 (2d Cir. 2007) ("The allegations that the defendants authorized improper 12b-1 fees, soft dollar payments, and commissions to brokers are insufficient to allege a claim under 36(b), which addresses only the negotiation and enforcement of payment arrangements between investment advisers and funds, not whether investment advisers acted improperly in the use of the funds."); <u>see also</u> <u>Scudder</u>, 2007 WL 2325862, at *15 (collecting additional cases). Again, absent any information as to the size of fees used to generate "fall-out" benefits, mere allegations of impropriety do not satisfy this factor.

### D. Economies of Scale

Economies of scale allegations are insufficient where there are no allegations of the costs. Amron, 464 F.3d at 345. Plaintiffs cannot meet their burden simply by pointing to the size of the funds and their rates of growth. There must be "allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed." Id. (citing Krinsk, 875 F.2d at 411). Aside from non-Fund-specific, economic analysis regarding theoretical economies of scale,[9] the SAC contains no allegations as to Defendants' costs of managing the Funds. (SAC ¶¶ 36-54.)

### E. Comparative Fee Structures

Plaintiffs allege that the fees charged by Defendants were excessive relative to other similar funds. Specifically, Plaintiffs compare the Funds' expense ratios to the value weighted average of funds with similar strategic objectives. (SAC ¶ 56.) In similar pleadings, such allegations "raise[] little suspicion under this fifth factor." Amron, 464 F.3d at 345 ("If rates charged by the many other advisers were an affirmative competitive criterion, there would be little purpose in § 36(b).") (citing Gartenberg, 694 F.2d at 929); see also Evergreen, 240 F.R.D. at 121-22.

### F. Independence and Conscientiousness of the Trustees

Finally, Plaintiffs allege that the Funds' directors failed to act independently and conscientiously. (SAC ¶¶ 87-139.) Without making any specific allegations regarding individual Directors, Plaintiffs assert that that the Directors "lacked the experience necessary" to police Fund practices (SAC ¶¶ 134-35), and declare that it was "unlikely that the Directors could devote the amount of time" to oversee the many portfolios on their watch (SAC ¶ 136). This kind of

---

[9] The consolidated amended derivative complaint proposed, and ultimately rejected, in Evergreen relied on largely identical sources to make substantially the same arguments regarding economies of scale.

conclusory allegation is insufficient as a matter of law. See Amron, 464 F.3d at 345-46 (citing Midgdal, 248 F.3d at 330-331); Evergreen, 240 F.R.D. at 122.  Certainly, Plaintiffs fail to overcome the ICA's express presumption that "mutual fund trustees and natural persons who do not own 25% of the voting securities are disinterested." Amron, 464 F.3d at 344 (noting that "a plaintiff's burden to overcome this presumption is a heavy one") (citations omitted).

While Plaintiffs have clearly tried to reconfigure the allegations contained in prior complaints in an attempt to meet the Gartenberg pleading requirements, Plaintiffs have failed to allege sufficient facts to support any of the Gartenberg factors.  When asked at oral argument, Plaintiffs' counsel conceded that he could not identify any case in the Second Circuit or Southern District of New York where allegations of this kind have satisfied the § 36(b) standard.[10]  Amron sets the standard for asserting a § 36(b) excessive fee claim pleading.  Plaintiff fails to meet that standard.

**CONCLUSION**

Accordingly, the Court grants the Defendants' motion to dismiss.[11]  Counts One and Two are dismissed with prejudice.  The Clerk of the Court is directed to close out these cases.

Dated: New York, New York
     December 3, 2007

                                                    SO ORDERED

                                                    PAUL A. CROTTY
                                                    United States District Judge

---

[10] When asked at oral argument whether any § 36(b) claims have survived the motion to dismiss stage, Plaintiffs' counsel responded, "[N]othing comes to mind right now." (Hr'g Tr. 39, Nov. 27, 2007.)

[11] Having reached this conclusion, the Court need not address Defendants' other argument under Rule 12(b)(6) that dismissal was proper because Plaintiffs failed to allege facts during the proper damages period, as defined by Rule 36(b)(3).

conclusory allegation is insufficient as a matter of law. See Amron, 464 F.3d at 345-46 (citing Midgdal, 248 F.3d at 330-331); Evergreen, 240 F.R.D. at 122. Certainly, Plaintiffs fail to overcome the ICA's express presumption that "mutual fund trustees and natural persons who do not own 25% of the voting securities are disinterested." Amron, 464 F.3d at 344 (noting that "a plaintiff's burden to overcome this presumption is a heavy one") (citations omitted).

While Plaintiffs have clearly tried to reconfigure the allegations contained in prior complaints in an attempt to meet the Gartenberg pleading requirements, Plaintiffs have failed to allege sufficient facts to support any of the Gartenberg factors. When asked at oral argument, Plaintiffs' counsel conceded that he could not identify any case in the Second Circuit or Southern District of New York where allegations of this kind have satisfied the § 36(b) standard.[10] Amron sets the standard for asserting a § 36(b) excessive fee claim pleading. Plaintiff fails to meet that standard.

## CONCLUSION

Accordingly, the Court grants the Defendants' motion to dismiss.[11] Counts One and Two are dismissed with prejudice. The Clerk of the Court is directed to close out these cases.

Dated: New York, New York
December 3, 2007

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

---

[10] When asked at oral argument whether any § 36(b) claims have survived the motion to dismiss stage, Plaintiffs' counsel responded, "[N]othing comes to mind right now." (Hr'g Tr. 39, Nov. 27, 2007.)

[11] Having reached this conclusion, the Court need not address Defendants' other argument under Rule 12(b)(6) that dismissal was proper because Plaintiffs failed to allege facts during the proper damages period, as defined by Rule 36(b)(3).

10